1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                        FOR THE DISTRICT OF OREGON

11  JACOB ANTHONY,                  )
                                    )
12              Plaintiff,          )
                                    )    No.  CV-07-698-HU
13       v.                         )
                                    )
14  CORPORAL ESTHER SCHACKMANN,     )
    CORPORAL KENNETH STEPP,         )    FINDINGS & RECOMMENDATION
15                                  )
                Defendants.         )
16  _____)

17  Jacob Anthony
    10146552
18  Two Rivers Correctional Institution
    Umatilla, Oregon 97882
19
        Plaintiff Pro se
20
    Hardy Myers
21  ATTORNEY GENERAL
    Leonard W. Williamson
22  ATTORNEY-IN-CHARGE
    Department of Justice
23  1162 Court Street NE
    Salem, Oregon 97301-4096
24
        Attorney for Defendants
25
    HUBEL, Magistrate Judge:
26
        Pro se plaintiff Jacob Anthony, an inmate at Two Rivers
27
    Correctional Institution, brings this 42 U.S.C. § 1983 action
28

1 - FINDINGS & RECOMMENDATION

1  against defendants Corporal Esther Schackmann and Corporal Kenneth
2  Stepp.   Plaintiff brings claims under the Eighth Amendment, First
3  Amendment, and Fourteenth Amendment, arising out of an incident in
4  November 2005 between plaintiff and Schackmann which occurred at
5  the Oregon State Penitentiary (OSP).

6      Defendants move for summary judgment on all claims.    I
7  recommend that the motion be granted.

8                              BACKGROUND

9      Plaintiff, an inmate in the custody of the Oregon Department
10  of Corrections (ODOC), was housed at OSP during the time the events
11  at issue took place.   Schackmann and Stepp are employed as
12  Corporals at OSP and were so employed at all times alleged in the
13  Complaint.

14      The parties agree that on November 25, 2005, Schackmann and
15  plaintiff were working in the dining room at OSP.   The parties
16  further agree that plaintiff requested a pair of rubber gloves from
17  Schackmann and that she told plaintiff she had none.

18      At this point, Schackmann contends that plaintiff followed her
19  around the dining hall, repeatedly asking for a pair of rubber
20  gloves. Schackmann Affid. at ¶ 3.   She allegedly told plaintiff to
21  go away.   Id. at ¶ 4.   Schackmann states that instead of leaving
22  her alone, plaintiff forcefully reached across her body and grabbed
23  for her waist at pocket level.   Id.   She instinctively raised her
24  arm to deflect plaintiff's hand and arm away from her body.   Id.
25  In doing so, she inadvertently struck plaintiff's head with her
26  open hand.   Id.

27      Plaintiff left the dining room to return to his cell.   Id. at
28  ¶ 5.   Schackmann reported the events to Captain Andrews, the

2 - FINDINGS & RECOMMENDATION

1  officer-in-charge at the time.  <u>Id.</u> at ¶ 6.  Plaintiff was

2  subsequently taken to the Disciplinary Segregation Unit (DSU),

3  without incident.  <u>Id.</u>

4      Both a misconduct and unusual incident report were completed

5  regarding the incident. Attmts 1 & 2 to Schackmann Affid.  The

6  misconduct report recites the facts according to Schackmann's

7  version of the incident.  Attmt 1 to Schackmann Affid.  It also

8  cites plaintiff with three separate disciplinary violations:

9  Attempted Assault I, Disrespect, and Disobedience of an Order I.

10  <u>Id.</u> Both Schackmann and Andrews signed the misconduct report.  <u>Id.</u>

11      The unusual incident report notes an attempted staff assault

12  by plaintiff with a reactive physical force used by Schackmann.

13  Attmt 2 to Schackmann Affid.  It also recites the facts according

14  to Schackmann's version of the incident.  <u>Id.</u>  It is signed by

15  Andrews.  <u>Id.</u>

16      Plaintiff agrees that he requested gloves from Schackmann, as

17  he had done on numerous previous occasions.  Pltf Affid. at ¶ 5.

18  He contends that Schackmann responded that she had none in the

19  closet.  <u>Id.</u> at ¶ 6.  Plaintiff states that he then asked if she

20  had an extra in her pants leg pocket, as he had also done on past

21  occasions.  <u>Id.</u> at ¶ 7.  While asking, he pointed to Schackmann's

22  right leg pants pocket with his right index finger while standing

23  directly in front of her, which he had been doing for the entire

24  conversation they had been having.  <u>Id.</u> at ¶ 8. At this point,

25  plaintiff alleges that Schackmann unexpectedly slapped him in the

26  left temple with her open and unimpeded right hand.  <u>Id.</u> Plaintiff

27  stepped back and told Schackmann never to put her hands on him.

28  <u>Id.</u>

3 - FINDINGS & RECOMMENDATION

1    Plaintiff contends that he complained to Corporal Flemming who
2    was apparently standing nearby.  Id. at ¶¶ 11, 13.  He also
3    approached Sergeant Alvis in the dining hall and complained about
4    being slapped by Schackmann without provocation.  Id. at ¶ 14.

5    On the date of the incident, plaintiff completed a medical
6    appointment form, complaining of a "tension headache" after having
7    been slapped by Schackmann.  Exh. F to Pltf Opp. Mem.  at p. 1.
8    The written response stated that the sick call nurse would see
9    plaintiff the following week and if need be, the doctor would also
10   see plaintiff the following week.  Id.  The written response also
11   states that plaintiff should take 800 milligrams of ibuprofen,
12   three to four times per day, or Tylenol, before seeing the doctor.
13   Id.  The signature is illegible and the response is dated November
14   26, 2005, the day after the request.  Id.

15   On December 5, 2005, plaintiff completed a grievance form in
16   which he stated that he was "not seen by medical after being
17   intentionally slapped" by Schackmann.  Id. at p. 2.  However, in
18   the section where he is asked to list any actions he had already
19   taken to resolve the grievance, he states that he spoke to the sick
20   call nurse and sent a kyte, and that he also requested to speak to
21   "psyche."  Id.

22   Plaintiff's medical progress notes from the time period show
23   a "no show" for the "MD clinic" on November 30, 2005.  Defts' Exh.
24   102.  The progress notes contain no record of later complaints of
25   headache.  Id.

26   An investigation of the incident was conducted by Inspector
27   Elwood L. Fogleman of the ODOC Investigations Unit.  Attmt 3 to
28   Schackmann Affid.  Fogleman interviewed plaintiff, Schackmann, and

4 - FINDINGS & RECOMMENDATION

1   at least three other inmates and three other ODOC employees.  Exh.
2   A to Pltf Opp. Mem.  He forwarded his report to Hearings Officer
3   Coleen Clemente for disposition.  Attmt 3 to Schackmann Affid. at
4   p. 3.

5        A hearing was held on January 9, 2005.  Attmt 4 to Schackmann
6   Affid.   All  three  misconduct  charges  against  plaintiff  were
7   dismissed  due  to  insufficient  evidence.   Id.   Plaintiff  was
8   apparently released from DSU at that point.

9                                STANDARDS

10       Summary judgment is appropriate if there is no genuine issue
11  of material fact and the moving party is entitled to judgment as a
12  matter of law.  Fed. R. Civ. P. 56©.  The moving party bears the
13  initial responsibility of informing the court of the basis of its
14  motion, and identifying those portions of "'pleadings, depositions,
15  answers to interrogatories, and admissions on file, together with
16  the affidavits, if any,' which it believes demonstrate the absence
17  of a genuine issue of material fact."  Celotex Corp. v. Catrett,
18  477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©).

19       "If the moving party meets its initial burden of showing 'the
20  absence of a material and triable issue of fact,' 'the burden then
21  moves to the opposing party, who must present significant probative
22  evidence tending to support its claim or defense.'"  Intel Corp. v.
23  Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)
24  (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th
25  Cir. 1987)).  The nonmoving party must go beyond the pleadings and
26  designate facts showing an issue for trial.  Celotex, 477 U.S. at
27  322-23.

28       The  substantive  law  governing  a  claim  determines  whether  a

5 - FINDINGS & RECOMMENDATION

1  fact is material.  <u>T.W. Elec. Serv. v. Pacific Elec. Contractors</u>
2  <u>Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as
3  to the existence of a genuine issue of fact must be resolved
4  against the moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>
5  <u>Radio</u>, 475 U.S. 574, 587 (1986).  The court should view inferences
6  drawn from the facts in the light most favorable to the nonmoving
7  party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.

8      If the factual context makes the nonmoving party's claim as to
9  the existence of a material issue of fact implausible, that party
10 must come forward with more persuasive evidence to support his
11 claim than would otherwise be necessary.  <u>Id.</u>; <u>In re Agricultural</u>
12 <u>Research and Tech. Group</u>, 916 F.2d 528, 534 (9th Cir. 1990);
13 <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,</u>
14 <u>Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).

15                            DISCUSSION
16     Plaintiff claims that Schackmann's slap violated the Eighth
17 Amendment.  He further claims that, in violation of the First
18 Amendment, he was placed in the DSU in retaliation for complaining
19 about the incident to Flemming and Alvis.  Finally, he contends
20 that his placement in the DSU violated the Due Process Clause of
21 the Fourteenth Amendment.  I address the claims in turn.
22 I.  Eighth Amendment

23     For the purposes of this motion, I assume the facts in
24 plaintiff's favor.  Accordingly, I assume that Schackmann's slap to
25 plaintiff's head was unprovoked and was not, as Schackmann states,
26 a reflexive reaction to plaintiff's attempts to physically touch
27 her.

28     "[W]henever prison officials stand accused of using excessive

6 - FINDINGS & RECOMMENDATION

1  physical force in violation of the Cruel and Unusual Punishment
2  Clause, the core judicial inquiry is . . . whether force was
3  applied in a good faith effort to maintain or restore discipline,
4  or maliciously and sadistically to cause harm." <u>Hudson v.</u>
5  <u>McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>see also</u> <u>Whitley v. Albers</u>, 475
6  U.S. 312 (1986).

7      It is widely accepted that not "every malevolent touch by a
8  prison guard gives rise to a federal cause of action." <u>Hudson</u>, 503
9  U.S. at 9 (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.
10 1973) ("Not every push or shove, even if it may later seem
11 unnecessary in the peace of a judge's chambers, violates a
12 prisoner's constitutional rights.")). "The Eighth Amendment's
13 prohibition of cruel and unusual punishments necessarily excludes
14 from constitutional recognition <u>de minimis</u> uses of physical force,
15 provided that the use of force is not of a sort repugnant to the
16 conscience of mankind." <u>Hudson</u>, 503 U.S. at 9-10 (internal
17 quotations omitted).

18     Eighth Amendment cases from courts across the country have
19 usually held that a single incident typically is insufficient to
20 support an Eighth Amendment claim. For example, in <u>Swift v.</u>
21 <u>Iramina</u>, No. 08-00100 JMS-KSC, 2008 WL 1912470, at *3 (D. Haw. Apr.
22 29, 2008), the court dismissed a claim by a prisoner against a
23 guard who allegedly pushed him in response to a question by
24 plaintiff. Similarly, in <u>Meza v. Director of California Department</u>
25 <u>of Corrections</u>, No. 1:05-CV-01180-OWW-LJO-P, 2006 WL 1328220, at *3
26 (E.D. Cal. May 15, 2006), the court dismissed allegations that a
27 prison guard allegedly slammed the plaintiff's head into a wall,
28 resulting a bruise, as insufficient to state an Eighth Amendment

7 - FINDINGS & RECOMMENDATION

1  claim.

2      As the Meza court noted, the Ninth Circuit recognizes that in
3  an Eighth Amendment claim, the inquiry focuses on the use of force,
4  not the nature of the injury. Meza, 2006 WL 1328200, at *3 (citing
5  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) for the
6  proposition that "Eighth Amendment excessive force standard
7  examines de minimis uses of force, not de minimis injuries")). The
8  court in Oliver explained that the more well reasoned cases reject
9  an interpretation of Hudson which requires a de minimis injury
10  requirement. Oliver, 289 F.3d at 628. Rather, the Ninth Circuit
11  explained, the Hudson Court held that "'de minimis uses of physical
12  force' are not constitutional violations, focusing on the amount of
13  force used, not the nature or severity of the injury inflicted."
14  Id.

15      Here, I agree with defendants that, as a matter of law,
16  Schackmann's single open-handed blow to plaintiff's temple during
17  a single incident is a de minimis use of force, incapable of
18  supporting plaintiff's Eighth Amendment claim. See, e.g., Norman
19  v. Taylor, 25 F.3d 1259, 1262-64 (4th Cir. 1994) (keys swung at
20  inmate's face which struck his thumb was de minimis force); White
21  v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys swung at
22  inmate which slashed his ear was de minimis force); Black Spotted
23  Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985) (corrections
24  officer's pushing a cubicle wall so as to strike plaintiff's legs,
25  brusque order to inmate, and poking inmate in the back was de
26  minimis force); Roberts v. Samardvich, 909 F. Supp. 594, 604 (N.D.
27  Ind. 1995) (grabbing inmate, pushing him up the stairs toward his
28  cell, and placing him in cell cuffed, shackled, and secured to the

8 - FINDINGS & RECOMMENDATION

1  door was <u>de minimis</u> force under the circumstances); <u>Crow v. Leach</u>,

2  No. C 93-20199 WAI, 1995 WL 456357, at *2-3 (N.D. Cal. July 28,

3  1995) (corrections officer's pushing inmate into chair causing his

4  shoulder to break window behind him was <u>de minimis</u> force); <u>Jackson</u>

5  <u>v. Hurley</u>, No. C 91-2170 BAC, 1993 WL 515688, at *2 (N.D. Cal. Nov.

6  23, 1993) (blow to back of neck with forearm and kick to the ankle

7  of inmate were <u>de minimis</u> force); <u>Olson v. Coleman</u>, 804 F. Supp.

8  148, 150 (D. Kan. 1992) (single blow to head of handcuffed inmate

9  was <u>de minimis</u> force); <u>Neal v. Miller</u>, 778 F. Supp. 378, 384 (W.D.

10  Mich. 1991) (backhand blow with fist to the groin of inmate was <u>de</u>

11  <u>minimis</u> force).

12      I recommend that defendants' motion for summary judgment on

13  the Eighth Amendment claim, be granted.

14  II.  First Amendment

15      Defendants' argument against plaintiff's First Amendment claim

16  is noticeably off the mark.  In their opening memorandum in support

17  of their motion, defendants state that plaintiff's First Amendment

18  claim should be dismissed because there was no attempt to silence

19  him.  Defts' Mem. at p. 9.  According to defendants, "[plaintiff]

20  was able to say whatever he wanted to the hearings officer and the

21  investigator assigned to investigate his side of the events.  In

22  the end the disciplinary system worked to his advantage and the

23  charges against him were dismissed."  <u>Id.</u>

24      The problem here is that plaintiff's First Amendment claim is

25  not grounded in a deprivation of the opportunity to speak once he

26  was confined to DSU.  Rather, it is a classic retaliation claim in

27  which he contends that in retaliation for the exercise of his First

28  Amendment right to complain to Flemming and Alvis about the slap

9 - FINDINGS & RECOMMENDATION

1   from Schackmann, he was transferred to DSU.

2       The assertion of a viable First Amendment retaliation claim

3   requires five elements:  (1) an assertion that a state actor took

4   some adverse action against an inmate (2) because of (3) that

5   inmate's protected conduct, and that such action (4) chilled the

6   inmate's exercise of his First Amendment rights, and (5) the action

7   did not reasonably advance a legitimate correctional goal.  Rhodes

8   v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

9       While defendants fail to put forth an argument on each of

10  these elements, my review of the record indicates that defendants

11  are nonetheless entitled to summary judgment based on the first

12  element articulated in Rhodes.  Plaintiff names only Schackmann and

13  Stepp as defendants.  The record fails to support that either of

14  them were responsible for plaintiff's transfer to DSU.  Rather, the

15  misconduct report shows that Andrews is the state actor who

16  initiated the transfer which is the alleged retaliatory act.

17      In a section entitled "Placed in Holding Status," which

18  appears at the end of the misconduct report, the following appears:

19          As officer-in-charge, I have reviewed the foregoing
            Report of Misconduct and find that the rule violation(s)
20          is/are of such a serious nature that the good order and
            security of the facility require immediate removal of the
21          inmate and placement in segregation status because:  This
            inmate engaged in an activity that challenges the rules
22          of the institution.  He is placed in Segregation for
            restricted confinement, because he is a direct threat to
23          staff and inmates.

24  Attmt 1 to Schackmann Affid.  This is followed by the printed name

25  and signature of Andrews, who is identified as the person having

26  placed plaintiff in segregation.  Id.

27      To state a civil rights claim against an individual defendant,

28  plaintiff must allege facts showing a defendant's "personal

10 - FINDINGS & RECOMMENDATION

1  involvement" in the alleged constitutional deprivation or a "causal

2  connection" between a defendant's wrongful conduct and the alleged

3  constitutional deprivation.  Barren v. Harrington, 152 F.3d 1193,

4  1194 (9th Cir. 1998); Hansen v. Black, 885 F.2d 642, 646 (9th Cir.

5  1989).   Here, plaintiff fails to allege that either of the

6  named defendants had a personal involvement in the decision to

7  transfer plaintiff to DSU.  He fails to show that either of the

8  named defendants has any causal connection to the alleged

9  constitutional deprivation at issue in the First Amendment claim.

10  His failure to name Andrews as a defendant is fatal to the claim.

11      I recommend that defendants' motion for summary judgment as to

12  the First Amendment claim, be granted.

13  III.  Due Process - Fourteenth Amendment

14      Finally, as to the Due Process claim, plaintiff contends that

15  his allegedly unfounded placement in DSU violated his Fourteenth

16  Amendment right to due process of law.  I agree with defendants

17  that plaintiff cannot sustain this claim.

18      In Sandin v. Conner, the Supreme Court rejected plaintiff's

19  position that "any state action taken for a punitive reason

20  encroaches upon a liberty interest under the Due Process Clause

21  even in the absence of any state regulation."  Sandin v. Conner,

22  515 U.S. 472, 484 (1995).   While "prisoners do not shed all

23  constitutional rights at the prison gate," state-created liberty

24  interests protected by the Due Process Clause and arising in the

25  prison context, "will be generally limited to freedom from

26  restraint which . . . imposes atypical and significant hardship on

27  the inmate in relation to the ordinary incidents of prison life."

28  Id. at 484, 485 (citations omitted).

11 - FINDINGS & RECOMMENDATION

1    Following this standard, the Court concluded that the case
2    before it, where the plaintiff had been placed in disciplinary
3    segregation for thirty days, "though concededly punitive," "did not
4    present the type of atypical, significant deprivation in which a
5    State might conceivably create a liberty interest." Id. at 486.

6    Moreover, plaintiff here received all of the "process" he was
7    constitutionally due. Wolff v. McDonnell, 418 U.S. 539, 563-72
8    (1974) outlines the basic due process guarantees required in the
9    prison disciplinary context. As the Ninth Circuit summarized in a
10   1994 case, Wolff prescribes five key procedural requirements: (1)
11   written notice of the charges; (2) a brief period of time given to
12   the inmate to prepare for an appearance before a committee or
13   hearing; (3) written statement by the factfinders as to the
14   evidence relied on and the reasons for the disciplinary action; (4)
15   the ability of the inmate to call witnesses and present documentary
16   evidence; and (5) if the inmate is illiterate or unable to collect
17   and present evidence necessary for an adequate comprehension of the
18   case, the provision to the inmate of a fellow inmate as an aide or
19   a substitute staff aide. Walker v. Sumner, 14 F.3d 1415, 1420 (9th
20   Cir. 1994), overruled on other grounds by Sandin.

21   Here, plaintiff received a written misconduct report and was
22   given the opportunity to appear before a hearing several days after
23   the charges were presented to him. The initial hearing was
24   postponed when plaintiff requested an investigation, which included
25   interviews with inmate witnesses identified by plaintiff and staff,
26   and a review of documentary evidence. Plaintiff was exonerated of
27   the charges following a hearing at the completion of the
28   investigation. Plaintiff received all constitutionally required

12 - FINDINGS & RECOMMENDATION

1  procedural guarantees.

2      I recommend that defendants' summary judgment motion as to the

3  due process claim, be granted.

4                          CONCLUSION

5      Defendants' motion for summary judgment (#32) should be

6  granted.

7                       SCHEDULING ORDER

8      The above Findings and Recommendation will be referred to a

9  United States District Judge for review.  Objections, if any, are

10  due February 10, 2009.  If no objections are filed, review of the

11  Findings and Recommendation will go under advisement on that date.

12      If objections are filed, a response to the objections is due

13  February 24, 2009, and the review of the Findings and

14  Recommendation will go under advisement on that date.

15      IT IS SO ORDERED.

16              Dated this  26th  day of  January  , 2009.

17

18

19                          /s/ Dennis James Hubel
20  _____  Dennis James Hubel
                                      United States Magistrate Judge

21

22

23

24

25

26

27

28

13 - FINDINGS & RECOMMENDATION